THE TRAVELERS INSURANCE COMPANY v. HEALY
PLUMBING & HEATING COMPANY.[1]

October 29, 1920.

No. 21,833.

**Workmen's Compensation Act — cause of accident — negligence of defendant not proved.**

Evidence examined and *held* not sufficient to sustain a finding that the accident resulted from the negligence of the defendant.

Action in the district court for Ramsey county to recover $3,910.50. The case was tried before Michael, J., who at the close of the testimony granted defendant's motion for a directed verdict on the ground that the cause of the death of the workman was purely matter of conjecture. From an order denying its motion for a new trial, plaintiff appealed. Affirmed.

*Dille, Hoke, Krause & Faegre,* for appellant.

*K. A. Campbell* and *B. Burness,* for respondent.

TAYLOR, C.

On November 28, 1917, Edward Polta fell from a ladder in the building then in course of construction for the St. Paul Athletic Club, and died from his injuries on the following morning. He was in the employ of the Electric Construction Company which was installing the electric wires in this building. His widow made a claim for compensation under the Workmen's Compensation Law. Her claim was conceded and allowed. Plaintiff, who had insured the construction company against liability for injuries to its employees, assumed the obligation to pay this compensation, and then brought the present suit to recover from the defendant, alleging that the accident was caused by the negligence of one of the employees of the defendant. When the plaintiff rested, the defendant offered no evidence, but also rested and moved for a directed verdict. The court granted the motion on the ground that the cause of the acci-

[1]Reported in 179 N. W. 686.

dent had not been shown but rested wholly in conjecture, and that the evidence would not sustain a finding of negligence on the part of the defendant or its employees. Plaintiff appealed from an order denying a new trial. The only question presented is whether the evidence made a case for the jury.

We have carefully examined all the evidence, and are satisfied that the conclusion reached by the learned trial court is correct. The building in which the accident happened is large and 12 stories in height. At the time of the accident, the main stairway had not been constructed, and a shaft or opening for this stairway extended from the second floor to the tenth floor. To enable the workmen to pass from one floor to another, planks were laid across this shaft at each floor, on which ladders were placed extending to the floor above. On the day of the accident, the deceased and two other employees of the construction company—the witnesses Hodum and Otte—were at work on the ninth floor. At quitting time they started to descend by means of the ladders; Hodum first, Polta second and Otte third. In this order they descended from the ninth to the eighth floor, from the eighth to the seventh, and started from the seventh to the sixth. When Polta was about midway of the ladder extending from the seventh to the sixth floor, he fell, striking on the sixth floor. At the time he fell Otte was on the top of the ladder and Hodum had just stepped away from the foot of it. Otte says that some object fell past him and struck Polta. He took it to be a pipe knuckle or piece of pipe, but was not certain what it was. Hodum did not see anything fall or strike Polta. No other witness saw anything fall or strike Polta.

The workmen were not at the building on the next day as it was Thanksgiving day, but Louis Siring, foreman for the construction company, went there to look for the object that had struck Polta. He saw nothing on the sixth floor which he thought might have fallen, but found a piece of concrete with a square edge or corner lying four or five feet from the stairway shaft on the fifth floor. Plaintiff's claim is based on the theory that an employee of the defendant, named Gallagher, who was at work on the tenth floor, caused this piece of concrete to drop from that floor, and that it struck Polta in its descent. The various floors of the building were constructed of concrete and tile. Numerous small open-

ings were left in each floor to accommodate the large number of pipes and conduits which were to be placed in the building. Before pouring the concrete for the floor a rectangular wooden form was placed in these openings and filled with sand to keep the concrete from flowing into them. The concrete, however, had in fact overflowed into many of these forms where it had hardened, and from which it had to be removed before the pipes and conduits could be installed. A number of subcontractors had men at work in all parts of the building on the day of the accident, and it is undisputed that tools, pieces of pipe, pieces of timber, pieces of tile and concrete and other articles were scattered throughout the building on all the floors. The defendant had a subcontract to install the plumbing including the drain pipes, and shortly before quitting time on the day of the accident its employee, Gallagher, had cut out and removed a quantity of concrete which had overflowed into an opening on the tenth floor through which a drain pipe was to pass. Siring took the piece of concrete, which he found on the fifth floor, to the tenth floor and found that it would fit perfectly into the wooden form from which Gallagher had removed the concrete. He frankly admits, however, that it would have fitted equally well into any of the other numerous forms from which concrete had been removed, and would not undertake to say where it came from, as it might have come from an opening in the sixth floor or in any of the floors above that. He states, however, that there was a mark upon it corresponding to a defect in one of the boards of the form in the tenth floor to which he fitted it, and that there were particles of fabric upon it which might have come from a pair of overalls which were hanging in this form at the time he made his examination.

Gallagher testified that he removed the concrete from this opening, and placed the pieces which he removed on the tenth floor, and that none of them fell to the floors below. No witness testified that anything fell through this opening or from its vicinity at any time. Furthermore, while there were several openings immediately adjacent to the stairway shaft, this opening was 10 or 12 feet from the stairway shaft, and anything falling through it would strike on the ninth floor at least 10 feet from the shaft, unless intercepted or deflected in some manner. Gallagher also testified that he completed the removal of the concrete and left the vicinity of the opening at least 15 minutes before quitting time,

and by direction of his foreman was engaged in picking up tools at the time of the accident. In this he is corroborated by the foreman, but is partially contradicted by another witness who states that about the time Gallagher began cutting out the concrete, he, the witness, started for another part of the building to procure a step-ladder, and that the accident happened while he was after the step-ladder.

Plaintiff lays considerable stress upon the testimony of two witnesses that, when Polta was being removed from the building and those gathered around him were talking about what had struck him, defendant's foreman, McGlynn, said it was a chunk of concrete. Both these witnesses state, however, that McGlynn did not say that he had seen the accident, but one of them states that he said something about a piece of concrete rolling over the edge of the shaft, but that he, the witness, did not catch the remainder of the remark, owing to the noise and excitement. McGlynn denied making these statements, and testified that he knew nothing of the accident, until he heard the outcry, at which time he was on the seventh or eighth floor and 30 or 40 feet from the shaft. If McGlynn made the remarks attributed to him, he was evidently not stating anything of which he had knowledge, but merely expressing his opinion in common with others in the crowd. It is the testimony to which we have referred upon which plaintiff relies to fasten liability on the defendant.

The accident happened at quitting time, when employees of different subcontractors were leaving from all floors of the building. Pieces of concrete and of other material were scattered about on all these floors. Assuming that Polta was struck by a piece of concrete, and this is conjectural only, there is nothing from which it may legitimately be inferred that Gallagher, rather than some other workman, was the one who dislodged it and caused it to fall.

Order affirmed.